IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35922-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THOMAS GERALD MARLIN, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Thomas Marlin appeals the trial court's restitution

order. We conclude the trial court abused its discretion by applying an incorrect legal

standard and remand for the trial court to apply the correct legal standard. We also grant

Marlin's unopposed request that the trial court strike the $200 criminal filing fee.

FACTS

On March 18, 2016, Thomas Marlin confronted Louis Dupuy over a $25 debt.

Marlin placed Dupuy in a bear hug, picked him up, and slammed him into two guard rails

on Dupuy's porch.

Later that day, Dupuy went to a previously scheduled appointment at the Doctor's

Clinic of Spokane to see Duncan Lahtinen, his primary care doctor. Dupuy had

preexisting medical conditions, and he saw his doctor once a month about those conditions.

*Previously scheduled March 18, 2016 visit*

At the March 18 visit, Marlin complained to Dr. Lahtinen of right pelvis and right shoulder pain, and said these pains were associated with him falling off his porch. Dr. Lahtinen ordered x-rays of the pelvis, hip, and shoulder. From these initial x-rays, Dr. Lahtinen could not identify any fractures.

*March 21, 2016 follow-up visit*

On March 21, 2016, Dupuy returned to see Dr. Lahtinen, and complained of pain in his shoulder, chest, ribs, and severe lower back pain. At this visit, Dupuy told Dr. Lahtinen that these injuries were actually caused by him being thrown against guard rails on his porch.

Dr. Lahtinen ordered additional x-rays on Dupuy's right shoulder, right rib, and his thoracic, lumbar, and sacral spine. From the March 21 x-rays, Dr. Lahtinen identified acute injuries.

*March 23, 2016 follow-up visit*

On March 23, 2016, Dupuy again returned to Dr. Lahtinen's office, this time to discuss the second round of x-rays. At this visit, Dr. Lahtinen ordered a computerized

axial tomography (CT) scan of Dupuy's abdomen and pelvis.  Dr. Lahtinen identified

fractures in the right 12th rib, and the right L1 and right L2 transverse processes.

*Monthly checkups*

Dupuy continued to see Dr. Lahtinen on a monthly basis for all of his conditions,

including those caused by his March 18 injuries.

*Trial and sentence*

The State charged Marlin with second degree assault.  A jury found Marlin guilty

of the lesser offense of fourth degree assault.  The trial court sentenced Marlin to 364

days of confinement with 364 days suspended, and imposed legal financial obligations,

including a $200 criminal filing fee.

*Restitution hearing*

The court conducted a restitution hearing.  The testimonies of Dupuy, David

Hillman, and Cindy Hamamoto bear on the issues raised on appeal.

Dupuy testified that he saw his primary care doctor once a month before his

March 18, 2016 injury, continued seeing him once a month thereafter, and will continue

in this manner until he dies.

Hillman heads the billing and coding department for the Doctor's Clinic where Mr.

Dupuy was seen.  According to Hillman, 14 office visits were "primarily related" to

Marlin's assault against Dupuy. Report of Proceedings (RP) (May 31, 2018) at 22.

Hillman testified that Dupuy paid $236.00 of out-of-pocket expenses for those 14 visits,

and Medicare paid $784.79 for those 14 visits. Hillman also testified that the x-rays and

CT scan charges during Dupuy's March and May 2016 office visits totaled $157.00.

Hamamoto is a victim's advocate employed by the Spokane County Prosecutors

Office. Hamamoto testified that at the time of the hearing, no insurance company or state

agency had asserted claims seeking restitution in this case. She answered that it was not

uncommon to receive claims from parties long after the incident. In fact, as late as two

years after Dupuy's injuries, Medicare e-mailed Hamamoto that nothing had been paid

out relative to those injuries, and it had made no claims.

The State argued that it had established a sufficient causal link between the

criminal assault and the 14 office visits for which it was seeking restitution. Marlin

responded that the State had established a sufficient causal link for only 2 of the 14 office

visits. Marlin noted that Dupuy saw his doctor once a month both before and after his

March 18 injuries, and argued only the March 21 and March 23 visits were in addition to

his regular visits.

Ruling in the State's favor, the trial court stated:

4

So I'm finding that the State did meet its burden by a preponderance of substantial credible evidence that showed that the expenses that they're seeking, with *Mr. Hillman's testimony about the 14 visits being associated with the injuries* sustained on the March 18th, '16, porch incident, that they were related.

RP (June 1, 2018) at 57 (emphasis added).

The trial court later entered the following written finding:

[T]he State has proven by a preponderance of the evidence that the requested restitution in this matter is based on the victim's injuries and actual expenses incurred for treatment of those injuries. The trial court previously made a finding that there is *a casual* [sic] *link* between the assault in this case and the injuries suffered by the victim Louis Dupuy. The court's oral ruling is incorporated by reference.

Clerk's Papers (CP) at 202-03 (emphasis added).

The restitution order required Marlin to pay the following:

Louis Dupuy (out of pocket): $236.00
Inland Imaging: $157.00 (payable to Louis Dupuy)
Medicare of Washington: $784.79

CP at 203.

Marlin timely appealed to this court.

ANALYSIS

Marlin argues the trial court abused its discretion by applying an incorrect causation standard. He also argues the trial court abused its discretion by compensating Medicare when there was insufficient evidence it would ever claim a loss.

5

A.     RESTITUTION ORDER

*Standard of review*

We review an order of restitution for an abuse of discretion. *State v. Enstone*, 137 Wn.2d 675, 679, 974 P.2d 828 (1999). A trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). A trial court's application of an incorrect legal analysis or other error of law can constitute an abuse of discretion. *State v. Tobin*, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).

1.     *The required causal relationship: "But for" test*

A court may order a defendant convicted of a misdemeanor to pay restitution whenever the crime committed caused a financial loss to another. RCW 9.92.060(2); RCW 9.95.210(2); RCW 9A.20.030(1); *see also State v. Thomas*, 138 Wn. App. 78, 81-82, 155 P.3d 998 (2007). Absent agreement by a convicted defendant as to the amount of a restitution obligation, the State must prove the amount by a preponderance of the evidence. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). Although the claimed loss "'need not be established with specific accuracy,'" it still must be supported

by "'substantial credible evidence.'" *Id.* (quoting *State v. Fleming*, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994)).

Restitution is allowed only for losses that are causally connected to the crime committed by the defendant. *Id.*; *Tobin*, 161 Wn.2d at 524. "Losses are causally connected if, but for the charged crime, the victim would not have incurred the loss." *Griffith*, 164 Wn.2d at 966; *see also Tobin*, 161 Wn.2d at 524; *State v. Cawyer*, 182 Wn. App. 610, 617, 330 P.3d 219 (2014); *State v. Harris*, 181 Wn. App. 969, 974, 327 P.3d 1276 (2014); *State v. Acevedo*, 159 Wn. App. 221, 230, 248 P.3d 526 (2010).

Here, the trial court applied the incorrect legal standard. The trial court merely found there was "a casual [sic] link" between the assault and Dupuy's losses. CP at 203.[1] This is not the correct legal standard. The trial court was required to find which losses would not have been sustained "but for" Marlin's assault. Because the trial court applied the incorrect legal standard, it abused its discretion. We remand for the trial court to review the evidence presented and award restitution for only those losses sustained "but for" Marlin's assault.

---

[1] We note that the trial court's written finding referred back to its oral ruling. In that ruling, the trial court found that the restitution amounts were "associated with" DuPuy's injuries. RP (June 1, 2018) at 57. At most, the State presented evidence that the restitution amounts were "primarily related" to Dupuy's injuries. RP (May 31, 2018) at 22.

7

### 2. *Sufficiency of evidence that Medicare sustained a loss*

Marlin argues that Medicare has not asserted any loss, even two years after

Dupuy's injuries, and a potential future claim of loss by Medicare is speculative. Perhaps

so, but we disagree with the premise of Marlin's argument.

Marlin's obligation to pay restitution to Medicare is based on his assault

of Dupuy causing Medicare a financial loss. *See* RCW 9.92.060(2); RCW 9.95.210(2);

RCW 9A.20.030(1). There is no statutory requirement that Medicare make a claim.

Whether and to what extent Medicare has sustained a compensable loss depends on the

State presenting evidence which meets the "but for" causation test. For instance, if the

trial court finds that the March 21 and March 23 visits would not have occurred "but for"

the March 18 assault, the trial court can assess restitution in favor of Medicare for its

payments for those two visits.

### B. $200 CRIMINAL FILING FEE

Marlin contends that the court improperly imposed the $200 criminal filing fee

because he is indigent. RCW 36.18.020(2)(h) provides that the $200 criminal

filing fee "shall not be imposed on a defendant who is indigent as defined in

RCW 10.101.010(3)(a) through (c)." The State concedes that the trial court should not

have imposed the $200 criminal filing fee. We accept the State's concession. We

No. 35922-1-III
*State v. Marlin*

instruct the trial court to strike the $200 criminal filing fee from the judgment and sentence.

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Korsmo, J.                    (result only)

Siddoway, J.

9